**KAZEROUNI LAW GROUP, APC**
David McGlothlin, Esq. (SBN: 026059)
david@kazlg.com
Ryan McBride, Esq. (SBN: 032001)
ryan@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
Dana Rambow

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA—TUCSON DIVISION

| | |
|---|---|
| Dana Rambow, an individual, | Case No.: |
| Plaintiff(s), | **PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF:** |
| vs. | |
| Danville Services of Arizona, LLC, a limited liability company, | 1. UNLAWFUL INTERFERENCE IN VIOLATION OF FAMILY MEDICAL LEAVE ACT [29 U.S.C. §§ 2601-2654] |
| Defendant(s). | 2. FAILURE TO PROVIDE REASONABLE ACCOMMODATION FOR A DISABILITY AND/OR MEDICAL CONDITION ( A.R.S. § 41-1463(F)(4). Et seq.) |
| | 3. WRONGFUL TERMINATION ON THE BASIS OF A DISABILITY AND/OR MEDICAL CONDITION (A.R.S. § 41-1463 et seq.). |
| | 4. WRONGFUL TERMINATION ON THE BASIS OF AGE (A.R.S. § 41-1463 et seq.). |
| | **[JURY TRIAL DEMANDED]** |

PLAINTIFF'S COMPLAINT

## I.  INTRODUCTION

1. This action is brought by Dana Rambow ("RAMBOW" or "Plaintiff") against her former employer, Danville Services of Arizona, LLC ("DANVILLE" or "Defendant"), a limited liability company for failure to provide job-protected leave, failure to provide reasonable accommodations for a disability and/or medical condition, wrongful termination due to a disability and/or medical condition and wrongful termination due to age.

2. This action is brought under Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601 et seq., and the Arizona Revised Statutes §§ 41-1401 - 1493.02. (Arizona Civil Rights Act "ACRA").

3. The FMLA is a critical piece of federal legislation that was designed to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity (29 U.S.C. § 2601(a)(1), (2)).

4. Congress enacted the FMLA in response to growing concern about the inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. The FMLA is intended to accommodate the important societal interest in assisting families by minimizing the potential for job loss due to serious health conditions, the birth or adoption of a child, or the care of a child, spouse, or parent who has a serious health condition (29 U.S.C. § 2601(a)(3)).

5. The FMLA was designed to promote the goal of equal employment opportunity for men and women. It recognizes that it is unfair for an employee to be penalized because he or she needs time off from work for medical reasons or to care for family members. The FMLA is aimed at ensuring that individuals can handle their health and family needs without suffering adverse employment consequences (29 U.S.C. § 2601(a)(5)).

6. The FMLA grants eligible employees the right to take up to 12 weeks of

PLAINTIFF'S COMPLAINT

unpaid leave during any 12-month period for certain family and medical reasons, while maintaining the right to reinstatement, and protection from interference or retaliation for exercising or attempting to exercise any FMLA right (29 U.S.C. § 2612(a)(1), § 2614(a)(1), § 2615(a)).

7.     ACRA establishes a comprehensive scheme for combating employment discrimination. As a matter of public policy, the act recognizes the need to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination. (A.R.S. Code §  41-1463.) That policy is fundamental. *Hawkins v. State, Dept. of Economic* (App. Div.2 1995) 183 Ariz. 100, 900 P.2d 1236.

8.     The opportunity to be free from discriminatory practices in seeking, obtaining, and holding employment is a civil right, and the express purpose of the Arizona Civil rights Act is to provide effective remedies which will eliminate such discriminatory practices.  The act is to be construed liberally so as to accomplish this purpose. *Arizona Civil Rights Division, Dept. of Law v. Olson,* (App. Div.1 1982) 132 Ariz. 20, 643 P.2d 723.

9.     Plaintiff seeks back pay, front pay, compensatory damages, general damages, special damages, liquidated damages, punitive damages, attorney's fees and costs, as well as a declaratory judgment and injunction to restrain defendant employer from committing prohibited personnel practices, policies, customs and usage. Plaintiff seeks injunctive relief requiring the Defendant to take specific actions designed, implemented and confirmed by qualified outside consultants to ensure that all supervisory employees are adequately trained to identify, investigate and stop situations and complaints discussed herein.

10.     Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

- 3 -

PLAINTIFF'S COMPLAINT

## II.  PARTIES

11.     Plaintiff is a resident of, and domiciled in Oro Valley, Arizona, county of Pima County.

12.     Defendant is a limited liability company who is incorporated under the laws of Utah.  Defendant is actively engaged in business in, and employs over 500 employees in Tucson, Arizona.  Plaintiff was Defendant's employee in Tucson, Arizona.

## III.  JURISDICTION

13.     Jurisdiction and venue over this claim rest in United States District Court for the District of Arizona—Tucson Division, because the claims in this complaint arise from Plaintiff's employment with Defendant, which took place geographically within the jurisdiction and venue of this court.

14.     Pursuant to 28 U.S.C § 1331, district court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Here, the claims arise under federal law and raise a federal question.  This action is brought under 29 U.S.C. § 2601 *et seq*.

15.     Pursuant to 28 U.S.C. § 1367, district court has supplemental jurisdiction over the additional state claims, since they form part of the same case or controversy as the original federal claim.  The Federal and State claims share a common nucleus of operative facts, namely wrongful termination, unlawful discrimination, failure to provide reasonable accommodations, failure to provide leave, and unlawful employment practices in the workplace.

16.     The employment relationship that gives rise to this complaint geographically took place within this court's jurisdiction.  The unlawful employment practices alleged in this complaint occurred within this court's jurisdiction.

17.     Venue is proper in the District of Arizona as Plaintiff resides, and is domiciled in Oro Valley, Arizona, county of Pima County, and the unlawful employment practices alleged in this complaint occurred within this judicial district.

PLAINTIFF'S COMPLAINT

## IV.   EXHAUSTION OF REMEDIES & PROCEDURAL REQUIREMENTS

18.   RAMBOW filed a discrimination charge against DANVILLE with the Office of the Arizona Attorney General Civil Litigation Division, Civil Rights Division and Equal Employment Opportunity Commission ("Civil Rights Division"). RAMBOW has received the right to sue from the Civil Rights Division.  In accordance to A.R.S. § 41-1481, RAMBOW filed this action within one year from the date the plaintiff filed a charge with the Civil Rights Division.  Thus, RAMBOW has exhausted her administrative remedies, and has properly brought this action before this court.

## V.   STATEMENT OF FACTS

19.   RAMBOW is over sixty years of age.

20.   DANVILLE hired RAMBOW, and was soon promoted to the position of Director.

21.   DANVILLE paid RAMBOW an annual salary of approximately $120,000.

22.   At the time of hiring, RAMBOW had a history of ongoing cancer-related treatments. At the onset of her employment, she had informed the Defendant about her pertinent medical history, indicating the potential need for additional treatment in the future. Despite this, the Defendant initially encouraged RAMBOW to join their team, assuring her that her medical condition would not be a hindrance and that they would accommodate any necessary treatments.

23.   RAMBOW excelled at her position as a Director and had no history of discipline with DANVILLE.

24.   RAMBOW won several prestigious awards due to her business acumen.

25.   In or about March 2022, her primary physician notified her of the necessity for further chemotherapy to manage her cancer.

26.   In or about April 2022, RAMBOW relayed to DANVILLE her diagnosis

PLAINTIFF'S COMPLAINT

and the impending need for chemotherapy.

27.    In or around May of 2022, RAMBOW informed DANVILLE's staff that as a result of the required chemotherapy, she may require certain days off and leeway with her work schedule.  As such, RAMBOW requested approval for workplace accommodations during her chemotherapy.  Furthermore, RAMBOW requested job-protected leave pursuant to the FMLA.

28.    On or about June 1, 2022, RAMBOW began her chemotherapy treatment for her cancer.

29.    On June 8, 2022, DANVILLE terminated RAMBOW's employment, failing to provide DANVILLE with paid leave.

30.    Soon thereafter, DANVILLE hired a much younger and presumably healthy employee to replace RAMBOW.

31.    DANVILLE terminated RAMBOW's employment alleging performance issues.  However, this was a mere pretext.  To the contrary, DANVILLE terminated RAMBOW's employment due to her older age, and because she had cancer and was starting chemotherapy.  The termination was motivated by a discriminatory intent against RAMBOW due to her disability and her age.  RAMBOW was terminated because of her disability and her age. Furthermore, DANVILLE failed to provide RAMBOW with job-protected leave pursuant to the FMLA.  This is supported by the timing of the termination and the obvious change in attitude by RAMBOW's supervisors towards RAMBOW immediately after RAMBOW informed DANVILLE that she had cancer.

32.    RAMBOW did not want to stop working and intended to continue working for DANVILLE. She made multiple attempts to work with DANVILLE to preserve her job, however DANVILLE was unwilling to work with RAMBOW.

33.    As a result of DANVILLE's unlawful actions, RAMBOW has suffered substantial losses in income, and has incurred other economic and non-economic losses. RAMBOW has also suffered emotional distress because she was terminated

due to her health and without regard that she loved her job which provided for her livelihood.

**CAUSES OF ACTION**

**<u>FIRST CAUSE OF ACTION</u>**

**UNLAWFUL INTERFERENCE IN VIOLATION OF FAMILY MEDICAL LEAVE ACT**

**[29 U.S.C. §§ 2601-2654]**

34.    Plaintiff RAMBOW realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

35.    The Family Medical Leave Act ("FMLA") require covered employers to permit eligible employees to take up to 12 weeks of job-protected, unpaid leave in a 12-month period to care for an employee's own serious health condition.  (29 U.S.C. §2612(a))

36.    The FMLA protects employees against interference with the exercise or attempted exercise of their substantive rights under the statute. 29 U.S.C. § 2615(a)(1).  To state a claim of interference, the employee must allege that he was entitled to a benefit under the FMLA and was denied that benefit. *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001).

37.    The FMLA protects employees against interference with the exercise or attempted exercise of their substantive rights under the statute. 29 U.S.C. § 2615(a)(1). This prohibition extends to providing protection against retaliation for exercising or attempting to exercise rights under the statute. *See* 29 C.F.R. § 825.220(c).

38.    At all times herein mentioned, FMLA was in full force and effect and fully binding upon Defendant.  Plaintiff is a member of a group protected by the statute.

39.    DANVILLE violated FMLA by failing to provide RAMBOW with job-protected leave to care for her serious medical condition.

40.     Plaintiff requested the Defendant to provide her with accommodations for her disability. One of the accommodations was to provide her with job-protected leave pursuant to the FMLA.

41.     Instead of providing her with protected leave, DANVILLE terminated RAMBOW's employment the same month the Plaintiff began her chemotherapy cancer treatment.

42.     These facts show that DANVILLE interfered with RAMBOW's right to paid leave pursuant to FMLA.  DANVILLE failed to provide RAMBOW with paid leave, and instead terminated her employment.

43.     As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer substantial losses in earnings, equity and other employment benefits, and has incurred other economic and non-economic losses.

44.     As a further direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at time of trial.

45.     The Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of the Plaintiff.  In this manner, the Plaintiff is entitled to recover punitive damages from Defendant in an amount to be proven at the time of trial.

46.     Therefore, DANVILLE is liable for unlawful interference, and retaliation in violation of FMLA.

47.     Plaintiff also requests relief as described below.

///

///

///

PLAINTIFF'S COMPLAINT

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REASONABLE ACCOMMODATION FOR A

## DISABILITY AND/OR MEDICAL CONDITION

### [A.R.S. § 41-1463, *et seq*.]

48.     Plaintiff RAMBOW realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

49.     Under ACRA, an employer must make "reasonable accommodations" for individuals with known disabilities and/or medical conditions, unless it can demonstrate that doing so would be an undue hardship on its business operations. A.R.S. § 41-1461(12). The failure to make a reasonable accommodation is itself an unlawful practice that can give rise to an ACRA damages action.  Failure to engage in interactive process gives rise to an ACRA action. A.R.S. § 41-1463(F)(4).

50.     The interactive process requires: "1) direct communication between the employer and employee to explore in good faith the possible accommodations; 2) consideration of the employee's request; and 3) offering an accommodation that is reasonable and effective." *Zivkovic v, S. Cal. Edison Co*., (9th Cir. 2002) 302 F.3d 1080, 1089)

51.     At all times herein mentioned, ACRA was in full force and effect and fully binding upon Defendant.  Plaintiff is a member of a group protected by the statute. Cancer is a disability covered by statute prohibiting employment discrimination on the basis of a handicap. (*Burris v. City of Phoenix,* (App. Div.1 1993) 179 Ariz. 35, 875 P.2d 1340.

52.     DANVILLE violated ACRA by failing to provide reasonable accommodations to RAMBOW for her disability.

53.     At all relevant times, Plaintiff was an employee of Defendant.  The Plaintiff was diagnosed with cancer and required chemotherapy. Defendant was aware of Plaintiff's medical condition.

54.     Plaintiff requested the Defendant to provide her with accommodations

PLAINTIFF'S COMPLAINT

for her disability. One of the accommodations was to provide flexibility in her office schedule so she may attend her chemotherapy treatment. Defendant did not make this accommodation.

55. Instead, DANVILLE terminated RAMBOW's employment the same month the Plaintiff began her chemotherapy cancer treatment.

56. These facts show that DANVILLE discriminated against RAMBOW on the basis of her disability, and failed to provide RAMBOW with reasonable accommodations.

57. As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer substantial losses in earnings, equity and other employment benefits, and has incurred other economic and non-economic losses.

58. As a further direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at time of trial.

59. The Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of the Plaintiff. In this manner, the Plaintiff is entitled to recover punitive damages from Defendant in an amount to be proven at the time of trial.

60. Therefore, DANVILLE is liable for failure to provide reasonable accommodations for RAMBOW's disability and/or medical condition in violation of ACRA.

61. Plaintiff also requests relief as described below.

///

///

///

- 10 -

PLAINTIFF'S COMPLAINT

## THIRD CAUSE OF ACTION

## WRONGFUL TERMINATION ON THE BASIS OF A DISABILITY

## [A.R.S. § 41-1463, *et seq*.]

62.    Plaintiff RAMBOW realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

63.    Under ACRA, it is unlawful for employers, because of a person's physical disability, mental disability, or medical condition, to: 1) refuse to hire or employ the person; 2) refuse to select the person for a training program leading to employment; 3) bar or discharge the person from employment or from a training program leading to employment; or 4) discriminate against the person in compensation or in terms, conditions, or privileges of employment.  A.R.S. §41–1463.

64.    A prima facie case for discrimination on grounds of a disability and/or medical condition under the ACRA requires plaintiff to show: 1) she is disabled; 2) that she is qualified to perform the essential functions of her job with or without a reasonable accommodation; and, 3) that she was discharged because of her disability.

65.    At all times herein mentioned, ACRA was in full force and effect and fully binding upon Defendant.  Plaintiff is a member of a group protected by the statute.

66.    DANVILLE violated ACRA by discriminating against RAMBOW, and terminating her employment due to her disability.

67.    Plaintiff suffered from medical conditions that left her immune system vulnerable, specifically RAMBOW was diagnosed with cancer. Cancer is a disability covered by statute prohibiting employment discrimination on the basis of a handicap. (*Burris v. City of Phoenix,* (App. Div.1 1993) 179 Ariz. 35, 875 P.2d 1340, review denied.)

68.    Plaintiff was able to continue performing her work for the Defendant. Plaintiff intended to continue working for Defendant, but Defendant was unwilling to

PLAINTIFF'S COMPLAINT

work with Plaintiff to accommodate Plaintiff's request for reasonable accommodations so that Plaintiff may attend chemotherapy and cancer treatment appointments.

69.    Plaintiff was terminated because Defendant was unwilling to reasonably accommodate Plaintiff's chemotherapy and cancer treatment appointments.

70.    These facts show that DANVILLE discriminated against RAMBOW on the basis of her disability, and in turn terminated her employment due to her disability and/or medical condition.

71.    As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer substantial losses in earnings, equity and other employment benefits, and has incurred other economic and non-economic losses.

72.    As a further direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at time of trial.

73.    The Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of the Plaintiff.  In this manner, the Plaintiff is entitled to recover punitive damages from Defendant in an amount to be proven at the time of trial.

74.    Therefore, DANVILLE is liable for wrongful termination in violation of ACRA.

75.    Plaintiff also requests relief as described below.

///

///

///

///

PLAINTIFF'S COMPLAINT

**FOURTH CAUSE OF ACTION**

**WRONGFUL TERMINATION ON THE BASIS OF AGE**

**[A.R.S. § 41-1463, *et seq.*]**

76.    Plaintiff RAMBOW realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

77.    Under ACRA, it is unlawful for employers, because of a person's age of forty years or more, to: 1) refuse to hire or employ the person; 2) refuse to select the person for a training program leading to employment; 3) bar or discharge the person from employment or from a training program leading to employment; or 4) discriminate against the person in compensation or in terms, conditions, or privileges of employment. A.R.S. §41–1465.

78.    A prima facie case for discrimination on grounds of age under the ACRA requires plaintiff to show but for presence of age discrimination, individual would not have been discharged. *Matos v. City of Phoenix,* (App. Div.2 1993) 176 Ariz. 125, 859 P.2d 748.

79.    At all times herein mentioned, ACRA was in full force and effect and fully binding upon Defendant.  Plaintiff is a member of a group protected by the statute.

80.    RAMBOW is over the age of sixty.  DANVILLE violated ACRA by discriminating against RAMBOW, and terminated her employment due to her age.

81.    Plaintiff was able to continue performing her work for the Defendant. Plaintiff intended to continue working for Defendant, but Defendant terminated Plaintiff on or about June of 2022. Within a week of terminating RAMBOW, Defendant filled Plaintiff's Medical Homes Director position with a much younger employee.

82.     These facts show that DANVILLE discriminated against RAMBOW on the basis of her age, and in turn terminated her employment due to her age.

83.    As a direct, foreseeable and proximate result of Defendant's unlawful

actions, Plaintiff has suffered, and continues to suffer substantial losses in earnings, equity and other employment benefits, and has incurred other economic and non-economic losses.

84.    As a further direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at time of trial.

85.    The Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights or safety of the Plaintiff.  In this manner, the Plaintiff is entitled to recover punitive damages from Defendant in an amount to be proven at the time of trial.

86.    Therefore, DANVILLE is liable for wrongful termination in violation of ACRA.

### VI.    PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant as follows:

i.    That the Court declare that DANVILLE failed to provide job-protected leave to RAMBOW, interfered with her rights protected by FMLA, and retaliated against RAMBOW for exercising her rights under the FMLA;

ii.    That the Court declare that DANVILLE failed to provide reasonable accommodations for RAMBOW's disability and/or medical condition in violation of ACRA;

iii.    That the Court declare that DANVILLE wrongfully terminated RAMBOW's employment due to her disability and/or medical condition in violation of ACRA;

iv.    An award of compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, lost by reason of Defendant's unlawful conduct under the

PLAINTIFF'S COMPLAINT

FMLA, with interest.

v.    An award of liquidated damages equal to the sum of the amount of back pay and interest found due, or, if Defendant can prove that its violation was in good faith and that it had reasonable grounds for believing that its conduct was not a violation of the FMLA, such lesser amount as the court deems equitable;

vi.    An award of any other monetary losses sustained by Plaintiff as a direct result of Defendant's violation, such as the cost of providing care, during the period of such violation of FMLA;

vii.    An award of compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof allowed by law for unlawful discrimination, failure to make accommodations, and wrongful termination in violation of ACRA;

viii. An award of punitive damages;

ix.    An award of restitution and/or disgorgement;

x.    An award of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. §2617(a)(3); A.R.S. §41-1481(J) or other similar laws;

xi.    An award of prejudgment and post-judgment interest; and

xii.    An award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper.

Dated: June 9, 2023                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**


By: Ryan L. McBride
RYAN L. MCBRIDE, ESQ.
*Attorney for Plaintiff*

PLAINTIFF'S COMPLAINT